UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PARTNERS HEALTHCARE SYSTEM, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civ. Action. No. 06-11436-JLT |
| | * | |
| WALTER J. SULLIVAN, JR., DORCA I. | * | |
| GOMEZ, and CYNTHIA A. TUCKER, in their | * | |
| official capacities as Commissioners of the | * | |
| MASSACHUSETTS COMMISSION AGAINST | * | |
| DISCRIMINATION, COMMONWEALTH OF | * | |
| MASSACHUSETTS, and JASON WEBSTER, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

June 25, 2007

TAURO, J.

Plaintiff, Partners Healthcare System, Inc., brings this action for injunctive relief against

Defendants Walter J. Sullivan, Jr., Dorca I. Gomez, and Cynthia A. Tucker ("MCAD

Defendants"), the duly appointed Commissioners of the Massachusetts Comission against

Discrimination ("MCAD"), and Defendant Jason Webster, an employee of Plaintiff who has filed

a charge of discrimination against Plaintiff before the MCAD.  Plaintiff asks this court to enjoin

the ongoing MCAD proceedings, as preempted by the federal Employment Retirement Income

Security Act ("ERISA").

**Background**

The facts are undisputed, except as otherwise noted.  Plaintiff operates hospitals and other

healthcare entities with employees in Massachusetts, Rhode Island, and New Hampshire.  Plaintiff

offers its employees a variety of health and welfare plans, which it alleges to be regulated by

ERISA.  Under these plans, Plaintiff offers employee benefits to unmarried same-sex domestic partners of its employees, but not to unmarried heterosexual domestic partners.

Defendant Webster, an employee of Plaintiff who has a heterosexual domestic partner, filed a charge of discrimination with the MCAD on July 12, 2005.  Webster alleged sexual orientation discrimination, in violation of M.G.L. ch. 151B § 4, which bars certain kinds of discrimination in the terms and conditions of employment.  On August 19, 2005, Plaintiff asked the MCAD to dismiss the charge, as being pre-empted by ERISA. The MCAD denied this petition without opinion, on February 22, 2006 and, approximately four months later, denied a petition for full commission review.  On October 20, 2006, the MCAD amended the charge to include a charge of "associational sex discrimination, pursuant to M.G.L. ch. 151B, § 4, ¶ 1 and Title VII of the Civil Rights Act of 1964."[1]

MCAD Defendants argue that the MCAD denied Plaintiff's motion to dismiss as it was premature.  MCAD Defendants argue that the MCAD needed to investigate Plaintiff and determine whether it was also discriminating in any non-ERISA regulated plans, and whether it had failed to properly segregate and manage its ERISA funds, thus making it ineligible to claim ERISA preemption.  MCAD Defendants assert that these areas still require factual investigation.

Plaintiff moves for Summary Judgment, asserting that there are no material facts in dispute, and that it is entitled to injunctive relief.  In response, Defendant moved to dismiss on the basis of Younger abstention, and filed a Rule 56(f) Motion to conduct the above-described factual investigation.  Plaintiff assents, in part, to this motion, noting that discovery would allow the

---

[1]  Mem. in Supp. of Defs.' Rule 56(f) Mot. to Deny Pl.'s Mot. for Summ. J., Ex. A, Paper 17-2.

MCAD Defendants to "be in a position to determine whether they can genuinely dispute Partners' statement that its challenged benefit plans are ERISA plans."[2]

The Gay and Lesbian Advocates and Defenders ("GLAD") moved to intervene as a Defendant. Though the court denied this motion, it permitted GLAD to file an amicus brief, which raises arguments considered below.

**Discussion**

I.     <u>Motion to Dismiss on the Basis of Younger Abstention</u>

     A.     *When is Younger Abstention Appropriate?*

Plaintiff seeks a court order enjoining Massachusetts state officials from conducting an ongoing administrative proceeding. As an initial matter, it is worth noting that the Anti-Injunction Act does not bar the requested injunction.[3] In fact, "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."[4] But, in <u>Younger</u>, and subsequent cases, the Supreme Court created a judicial doctrine of abstaining from cases that would involve enjoining state officers.[5] "<u>Younger</u> abstention is ordinarily required if (1) there is an ongoing state judicial proceeding involving the federal plaintiff that (2) implicates important state interests and (3) provides an adequate opportunity for the federal plaintiff to

---

    [2] Partners' Limited Opp. to Defs.' Mot. Under Rule 56(f), Paper #20, p. 2.

    [3] <u>SMA Life Assurance Co. v. Sanchez-Pica</u>, 960 F.2d 274, 276 (1st Cir. 1992) ("Indeed, the judge believed that the Anti-Injunction Act did not apply to this case, since an administrative proceeding and not a state court proceeding was at issue. While the Supreme Court has left the issue open, the appellate courts seem to agree that the Act applies only to state courts.").

    [4] <u>Local Union No. 12004, USW v. Massachusetts,</u> 377 F.3d 64, 74 (1st Cir. 2004) (citing <u>Ex parte Young</u>, 209 U.S. 123, 160-62 (1908)).

    [5] <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

assert his federal claims."[6]  It is undisputed that the charge of discrimination Defendant Webster

brought before the MCAD initiated a state judicial proceeding which provides Plaintiff an

adequate opportunity to assert his federal claims.  Whether the ongoing MCAD proceeding

implicates an important state interest requires further inquiry.

Plaintiff argues that there can be no important state interest in adjudicating a dispute under

a state law which is preempted by ERISA.  The Supreme Court has noted that district courts

should abstain where there is only a substantial claim of preemption,[7] but the First Circuit has

ruled that where there is a "facially conclusive" claim, abstention is inappropriate.[8]  In Local

Union 12004, union picketers yelled derogatory remarks at a homosexual employee who was

working during a lockout.[9]  The Union asked the federal courts to enjoin the MCAD proceedings,

as preempted by the National Labor Relations Act.[10]  The First Circuit ruled that there is no

important state interest in furthering a proceeding that is conclusively preempted, facially, and

held that further proceedings were needed to determine whether the employee's claim was

---

[6] Id. at 77 (1st Cir. 2004) (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

[7] New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 365 (1989) [hereinafter NOPSI].

[8] Chaulk Servs. v. Massachusetts Comm'n Against Discrimination, 70 F.3d 1361, 1370 (1st Cir. 1995) ("Younger abstention is inappropriate where a claim of preemption is 'facially conclusive' or 'readily apparent,' because no significant state interests are served when it is clear that the state tribunal is acting beyond the lawful limits of its authority.").

[9] Local Union 12004, 377 F.3d at 68-70.

[10] Id.

4

preempted in that case.[11]

MCAD Defendants argue that this holding is not controlling, and attempt to limit Chalk
Servs. and Local Union 12004 to their facts, emphasizing that they involved the possibility of
concurrent National Labor Relations Board and MCAD investigations.  MCAD Defendants point
to other case law, including a 1992 case by this court which, relying on NOPSI, concluded that
the strength of the state interest should be assessed without regard to the alleged federal ground
for issuing an injunction.[12]   While it still holds true that the court should not abstain when
presented with a substantial claim of preemption, Local 12004 clarifies the test, teaching that
Younger abstention is not appropriate where there is a facially conclusive claim of preemption.[13]
MCAD Defendants also rely on Ohio Civil Rights Commission v. Dayton Christian Schools,
where the Court demanded the lower court abstain on a school's request to enjoin a state
investigation.[14]   But Chalk Servs. and Local 12004 were decided after Dayton, and their
exception for claims of "facially conclusive preemption" is not inconsistent with Dayton's general
proviso against unwarranted intervention.  Accordingly, this court will apply the facially

---

[11] Id. at 74; Chalk Servs, 70 F.3d at 1370.  Both of these cases involved forum preemption, and the question of whether the federal plaintiff did, or should have, initiated action before the National Labor Relations Board (whose action would then preempt the states).

[12] Getty Petroleum Corp. v. Harshbarger, 807 F. Supp. 855, 858 (D. Mass. 1992) (Tauro, J.) (noting that "the presence of a preemption claim should not affect consideration as to whether important state interests are implicated" and expressing confidence that state tribunals will be competent to assess federal claims).

[13] Local Union No. 12004, 377 F.3d at 78 ("Since NOPSI, cases from both this circuit and other circuits have endorsed the existence of this 'facially conclusive' preemption exception to Younger.").

[14] 477 U.S. 619, 628 (1986).

5

conclusive preemption test in this case.

      *B.      What preemption is "facially conclusive"?*

Another circuit that has adopted this test has clarified, "only the clearest of federal preemption claims would require a federal court to hear a preemption claim when there are underlying state court proceedings and when that claim can be raised in the state forum."[15]  The court reasoned that this exception derives from the irreparable injury exception to <u>Younger</u> abstention.  The court noted that federal courts will not issue an injunction merely because a statute is potentially unconstitutional, but only in the face of a statute that is "flagrantly and patently violative."[16]  Specifically, the Supreme Court has stated, "what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination."[17]  One district court, in an ERISA preemption case, reasoned that since preemption did not apply to fully insured plans, and because whether the plans were fully insured was a factual question, <u>Younger</u> abstention was appropriate.[18]

      *C.      Is there an ERISA preemption issue here?*

The state law at issue makes it unlawful for an employer to discriminate against an

---

[15] <u>Hughes v. Attorney General of Fla.</u>, 377 F.3d 1258, 1265 (11th Cir. 2004).

[16] <u>Id.</u>; <u>see also</u> <u>Younger</u>, 401 U.S. at 54.

[17] <u>NOPSI</u>, 491 U.S. at 367.

[18] <u>Fuller v. Bartlett</u>, 894 F. Supp. 874, 880 (D. Md. 1995).  <u>See also</u> <u>Cedar Rapids Cellular Tel., L.P. v. Miller</u>, 280 F.3d 874, 880 n.2 (8th Cir. 2002) ("We note that the necessity of developing a factual record on the appellants' business practices and rate structure would appear to foreclose any argument of conclusive preemption."); <u>Bunning v. Kentucky</u>, 42 F.3d 1008, 1011 (6th Cir. 1994) ("This court has concluded that abstention is not required in a case presenting facially conclusive claims of federal preemption, where resolution of the dispute does not require the court to interpret state law or make factual findings.").

individual on the basis of sexual orientation, among other grounds, "in compensation or in terms, conditions or privileges of employment."[19]  Defendant Webster asserts Plaintiff violates this provision by not providing benefits to his heterosexual domestic partner, while simultaneously providing such benefits to homosexual domestic partners of other employees.  Plaintiff asserts that any such claim is preempted.  MCAD Defendants do not argue that ch. 151B does not fall within the general scope of ERISA preemption, though they make other arguments against preemption.[20]  Amicus Curiae, GLAD, does take the position that a state law of general applicability that bars discrimination on the basis of sexual orientation should not be preempted.  The court addresses this argument first.

ERISA supercedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."[21]  The Supreme Court has said that "relate to" cannot have its most expansive meaning, as "relations stop nowhere."[22]  A state law relates to ERISA, where it has a connection with, or a reference to such a plan.[23]  As M.G.L. ch. 151B § 4 does not act "immediately and exclusively upon ERISA plans," and an ERISA plan is not "essential to the

---

[19] M.G.L. ch. 151B § 4, ¶ 1.

[20] See, infra, Sections I.D and I.E.

[21] 29 U.S.C. § 1144(a).

[22] N.Y. State Conference of Blue Cross & Blue Shield Plans v. Traveler's Ins. Co., 514 S.S. 645, 655 (1995) (upholding a state law which added surcharges to fees which created indirect economic influence on the plan, but did not act directly on the plan).

[23] District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 129 (1992) (preempting a D.C. law which required employers to maintain benefits to those on workers compensation, and finding unpersuasive the District of Columbia's argument that the law could be saved by requiring employers to set up separate, non-ERISA plans to provide the required benefits).

law's operation," it does not reference ERISA.[24]  M.G.L. ch. 151B § 4 is a law of general

applicability, and is undisputably not preempted where it regulates non-ERISA benefits.[25]

The more difficult question is whether M.G.L. ch. 151B § 4 has a "connection" with

ERISA.  Recognizing this test is little more helpful than the "relates to" language, the Court offers

some clarification in Egelhoff v. Egelhoff.  "'[T]o determine whether a state law has the forbidden

connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the

state law that Congress understood would survive,' as well as to the nature of the effect of the

state law on ERISA plans.'"[26] Even in Egelhoff, though, which GLAD contends is part of a push

towards a reduced scope of preemption, the Court struck down a state law which automatically

revoked an ex-wife's life insurance designation upon a divorce.  The Court reasoned:

> The statute binds ERISA plan administrators to a particular choice of rules for
> determining beneficiary status. The administrators must pay benefits to the
> beneficiaries chosen by state law, rather than to those identified in the plan
> documents. The statute thus implicates an area of core ERISA concern. In
> particular, it runs counter to ERISA's commands that a plan shall "specify the
> basis on which payments are made to and from the plan," § 1102(b)(4), and that
> the fiduciary shall administer the plan "in accordance with the documents and
> instruments governing the plan," § 1104(a)(1)(D), making payments to a
> "beneficiary" who is "designated by a participant, or by the terms of [the] plan." §
> 1002(8). In other words, unlike generally applicable laws regulating "areas where
> ERISA has nothing to say," Dillingham, 519 U.S. at 330, which we have upheld
> notwithstanding their incidental effect on ERISA plans, see, e.g., ibid., this statute
> governs the payment of benefits, a central matter of plan administration.[27]

---

[24] Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., 519 U.S. 316,
325 (1997).

[25] See Catholic Charities of Me., Inc. v. City of Portland, 304 F. Supp. 2d 77, 93 (D. Me.
2004)

[26] 532 U.S. 141, 147 (2001) (quoting Dillingham, 519 U.S. at 325).

[27] Id. at 147-58.

In Dillingham, the court upheld a prevailing wage law, finding that it did not dictate an ERISA plan's choices.[28]  On the contrary, applying ch. 151B to Plaintiff's plan would in effect, specify who the plan must name as beneficiaries of the plan health insurance benefits.  Plan administrators would be obligated to pay under state law, and not under their plan documents.  In this way, such application of ch. 151B would govern the payment of benefits, and would clearly have a connection with, and directly relate to an ERISA plan.

In fact, the Supreme Court, and other courts, have struck down a number of anti-discrimination laws as applied to ERISA.  In 1983, well before some of the above decisions which clarified the preemption test,[29] the Supreme Court decided Shaw v. Delta Airlines.[30]  In that case, the court struck down, as preempted, a New York law that prohibited discrimination in employment benefits on the basis of pregnancy.[31]   A year later, the Ninth Circuit decided Champion International Corp. v. Brown, and applied Shaw to reverse a district court for abstaining from enjoining a state proceeding alleging that an ERISA plan was acting in violation of Montana state age discrimination law that was broader than the ADEA (in that it specified seventy rather than sixty-five as the age up to which pension credit could be earned).[32]

---

[28] Dillingham, 519 U.S. at 334.

[29] GLAD argues the subsequent change in law as another reason Shaw is not controlling, but as the District court of Maine recently, noted, "Travelers represented a retreat from the broadest reading once given 'relate to.' It did not, however, overrule Shaw." Catholic Charities, 304 F. Supp. 2d at 91 (D. Me. 2004).

[30] 463 U.S. 85 (1983).

[31] Id. at 97.

[32] 731 F.2d 1406, 1408 (9th Cir. 1984) ("[H]uman rights laws, insofar as they prohibit practices that are lawful under ERISA, are preempted. Montana's age discrimination law is

Two district courts have considered somewhat similar situations and found local ordinances regarding domestic partner benefits preempted.  Judge Hornby, from the district court of Maine, struck down aspects of a City of Portland ordinance mandating protection for domestic partners by employers that took city money:

> Portland's Ordinance demands that certain employers change their plans and offer coverage to domestic partners. Thus, like the state laws at issue in <u>Shaw</u> and <u>Egelhoff</u> (and unlike the law in <u>Travelers</u>), the Ordinance is concerned with the substantive content and administration of employee benefit plans, an area of core ERISA concern. Given the foregoing Supreme Court precedent, it is clear that if the Ordinance demanded that all employers in the City offer domestic partner coverage, it would be preempted.[33]

Similarly, when San Francisco adopted a similar ordinance, the district court in Northern California struck it down.[34]

GLAD argues these cases are distinguishable as they pertained to state laws which mandated specific benefits, but that laws of general applicability specifying equal treatment of beneficiaries should not be preempted.  For example, GLAD argues that <u>Shaw</u> is distinguishable as the pregnancy discrimination law was designed to mandate specific benefits, namely coverage

---

preempted to the extent it conflicts with ERISA-authorized provisions of Champion's pension plan."). MCAD Defendants note that this case was decided before <u>NOPSI</u>, and therefore should not be relied on.  While the court accepts that the <u>Champion</u> court's conclusion regarding abstention may be superceded to some extent, the conclusion regarding the scope of ERISA preemption still carries precedential weight.

[33] <u>Catholic Charities</u> 304 F. Supp. 2d at 92.

[34] <u>Air Transp. Ass'n of Am. v. City & County of San Francisco</u>, 992 F. Supp. 1149, 1176 (N.D. Cal. 1998) ("The Court concludes that the Ordinance has a connection with ERISA plans because it mandates employee benefit structures for City contractors and because the purpose and effect of the Ordinance conflict with ERISA's objective of permitting uniform national administration of employee benefit plans and eliminating the need to comply with conflicting State and local regulations.").

for pregnancy-related costs.  GLAD argues <u>Champion</u> is similarly distinguished, as the Montana age laws affected how benefits were calculated.  Under Ch. 151B, GLAD notes that Partners can pay whatever benefits it wishes, but must pay them equally, without regard for sexual orientation.  Although this might be a reasonable distinction, it is not the test that courts have adopted, and the above cases are not so limited.  They stand for the proposition that a state law "is connected with" ERISA if it specifies for an ERISA plan who can and cannot be an ERISA plan  beneficiary.

GLAD advances another argument against preemption, noting that even a finding of a violation by the MCAD would not determine who must be a beneficiary.  Rather, GLAD argues, Plaintiff could simply cease paying benefits to domestic partners.  This reasoning is not persuasive.  A finding of a violation of Ch. 151B would change how Plaintiff must provide its benefits, and would, in this way, directly connect with ERISA.

Finally, GLAD argues that findng a Ch. 151B violation would not interfere with the uniform administration of an ERISA plan, as it would actually be less work to give benefits to all or no domestic partners, rather than forcing an inquiry into sexual orientation.  This reasoning cuts against the purpose of preemption jurisprudence.  The state marriage laws of the states where Plaintiff operates treat homosexuals differently and, for that reason, Plaintiff argues it has struck a balance in its present provision of benefits only for domestic partners who are homosexual (and cannot get married outside of Massachusetts).  Regardless of whose view of efficient administration is better, the purpose of ERISA preemption is to allow employers to construct one national pension and benefit plan, which can control the payment of benefits to beneficiaries across several states.  It is not for GLAD, or even a state, to tell plans who can and must be beneficiaries.  If courts allowed such results, differing state laws could quickly make it difficult to

11

administer a fair, uniform plan.  Accordingly, any state law which directly controls who an ERISA

plan may specify as a beneficiariy is potentially preempted.

> D.      *Is the state law consistent with federal law?*

Shaw established that because ERISA has a provision noting that it does not alter other

federal law, any state discrimination law would not be preempted to the extent it was coextensive

with federal law.[35]  M.G.L Ch. 151B § 4, as applied in this case, could, therefore, be saved from

ERISA preemption to the extent it duplicates the protection afforded by Title VII.

MCAD Defendants argue that because Title VII envisions broader state discrimination

laws, such laws should not be preempted.  Shaw rejected that argument.[36]  As Title VII does not

list sexual orientation as an impermissible basis of discrimination,[37] a state law that does would not

be co-extensive, and would, therefore, be preempted.

MCAD Defendants attempt to avoid this conclusion, by noting that they have amended

Defendant Webster's charge of discrimination to allege a claim of "associational sex

discrimination."[38]  MCAD Defendants reason as follows: Title VII does not explicitly protect

against discrimination on the basis of being involved in an interracial relationships, but courts have

interpreted the ban on race discrimination to encompass discrimination based on the race of the

---

[35] 463 U.S. at 100-02 (citing 29 U.S.C. § 1144(d)).

[36] Id. at 103-104 n.24.  See also Tompkins v. United Healthcare of New Eng., Inc., 203 F.3d 90, 97 (1st Cir. 2000).

[37] 42 U.S.C. § 2000e-2(a)(1) (forbidding discrimination against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin").

[38] Mem. in Supp. of Defs.' Rule 56(f) Mot. to Deny Pl.'s Mot. for Summ. J., Ex. A, Paper 17-2.

person with whom an employee chooses to associate.[39]  In the same vein, MCAD Defendants

argue that it is impermissible sex discrimination to discriminate on the basis of the sex of the

person with whom an employee chooses to engage in a relationship.

Where an employer was sued under Title VII for sex discrimination in benefit plans by an

employee with a heterosexual domestic partner, alleging exactly the kind of discrimination at issue

here, the court dismissed the claims.[40]  In that case, plaintiff, a man, alleged discrimination on the

basis of gender, as his female domestic partner was not receiving benefits she would have received

if she was male.[41]  The court rejected the claim, finding the plaintiff was not similarly situated to

people with homosexual domestic partners, as those people, unlike Plaintiff, could not marry their

partners.[42]  This reasoning reveals a distinction: the court relied on the fact that homosexual

partners could not marry, a fact no longer true in Massachusetts.

If Defendant Webster's domestic partner was male, he would receive benefits.  In this way,

Plaintiff's policy does impose a disparate impact on similarly situated people on the basis of the sex

of the person with whom they choose to associate.

This analogy and line of argument is not without merit.  The Supreme Court has found

Title VII's prohibition on sex discrimination violated when an employer discriminates against an

---

[39] See e.g.,  Parr v. Woodmen of World Life Ins. Co., 791 F.2d 888, 892 (11th Cir. 1986)
("Where a plaintiff claims discrimination based upon an interracial marriage or association, he
alleges, by definition, that he has been discriminated against because of his race.").

[40] Foray v. Bell Atl., 56 F. Supp. 2d 327, 330 (S.D.N.Y. 1999).

[41] Id. at 329.

[42] Id. at 330.

employee for failure to meet gender stereotypes.[43]   MCAD Defendants' theory of associational sex

discrimination could be seen as an argument for extending this reasoning to support the conclusion

that sexual orientation discrimination is really sex discrimination, in that such discrimination targets

an employee's failure to comply with pre-conceived gender stereotypes, including the stereotypes

regarding sexual associational preferences.  The First Circuit has considered a claim of a plaintiff

who alleged he was harassed on the basis of sexual orientation.[44]  There, the court ruled that sexual

orientation was not protected under Title VII,[45] but declined to consider the claim of sexual

stereotype discrimination.[46]   But the Second Circuit has considered and directly rejected the idea

that the ban on sex discrimination could be used to "bootstrap protection for sexual orientation

discrimination into Title VII."[47]   In Vickers v. Fairfield Med. Ctr., The Sixth Circuit also directly

confronted this argument, and rejected it, ruling that Price Waterhouse was not so broad, but was

instead limited to  "characteristics that were readily demonstrable in the workplace, such as the

---

[43] Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989) ("[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for '[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'" (quoting Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707, n. 13 (1978))), superceded on other grounds by The Civil Rights Act of 1991, Pub L. No. 102-166, 105 Stat. 1071 (1991).

[44] Higgins v. New Balance Ath. Shoe, Inc., 194 F.3d 252 (1st Cir. 1999).

[45] Id. at 259  ("Title VII does not proscribe harassment simply because of sexual orientation.").

[46] Id. at 261.

[47] Dawson v. Bumble & Bumble, 398 F.3d 211, 218 (2d Cir. 2005) (quoting Simonton v. Runyon, 232 F.3d 33, 38 (2d Cir. 2000)).

plaintiff's manner of walking and talking at work, as well as her work attire and her hairstyle."[48]
The dissenter did not challenge this legal conclusion, but argued that the complaint did describe
discrimination based on contra-stereotypical characteristics observable at work, and noted that
while "homosexuality is not a qualifying classification for relief under Title VII, neither is it
disqualifying."[49]

   This court agrees that a Title VII claim involving sexual orientation is not automatically
disqualified, and does not go so far as to rule that any attempt to "bootstrap" protection for sexual
orientation should fail.  But, on the face of this case, the court can discern no viable claim of
associational sex discrimination that survives under the <u>Price Waterhouse</u> standard, as elucidated in
<u>Vickers</u>.  Defendant Webster is a heterosexual male who lives with a female domestic partner.
There is absolutely no reason to believe that he was discriminated against on the basis of any
stereotypical sex characteristic demonstrated in the workplace.  To the extent that MCAD
Defendants advance a stereotyping claim in this case, it fails.

   To the extent MCAD Defendants do not rely on the case law banning discrimination on the
basis of sex stereotypes, but instead propound the even more novel theory that all  associational
sex discrimination is barred as the analogue of interracial relationship discrimination, this argument
proves too much and must be rejected.  Adopting such a theory would serve to protect sexual
orientation in any context where sex discrimination is protected, including under Title VII and
Amendment XIV analysis.  Federal courts have not recognized that argument, and sexual

---

[48] 453 F.3d 757, 763 (6th Cir. 2006).

[49] <u>Id.</u> at 769-770 (Lawson. J., dissenting).

orientation does not, at this time, receive such extensive protection.[50]

The MCAD Defendants may respond to this conclusion by arguing that the novelty of the argument is grounds itself to find that preemption is not facially conclusive. While one court has implied that legal uncertainty can provide a basis for abstention,[51] this court rejects that argument. "It is emphatically the province and duty of the judicial department to say what the law is."[52] If the facts are unclear, then abstention is appropriate.[53] But where preemption turns on the scope of Title VII, and where MCAD Defendants advance novel arguments about that scope, it must be wholly appropriate for this court to weigh those arguments and to determine the scope of preemption. Only once the scope of preemption is known can the court meaningfully ask whether the present case for preemption is facially conclusive. The federal courts must not enjoin state proceedings where those proceedings vindicate an important state interest. But, if a federal court were to abstain simply because the law is complicated or novel, it would not be fulfilling its responsibility to plaintiffs who ask the court to protect their federal rights.

Here, because this court is able to readily ascertain that Defendants' theories of discrimination are not cognizable under Title VII, it is able to reach the conclusion that these

---

[50] See, e.g., Higgins, 194 F.3d at 259 ("Title VII does not proscribe harassment simply because of sexual orientation.").

[51] Hughes, 377 F.3d at 1271 (11th Cir. 2004) (noting that the court need not resolve a preemption claim once it determines the claim is not facially conclusive, and finding such lack of conclusiveness in the fact that "there are indications in congressional statutes and in the FAA's regulations that it was contemplated that state statutes would operate affecting the precise conduct at issue in this case").

[52] Marbury v. Madison, 5 U.S. 137, 177 (1803).

[53] See, supra, Section I.A.

theories do not escape preemption under ERISA, and that <u>Younger</u> abstention is inapplicable in the face of this facially conclusive preemption.[54]

> ### E.   Does the alleged need for factual investigation require abstention?

MCAD Defendants next argue that a need for further factual investigation defeats any conclusion of facially conclusive preemption, thereby requiring abstention. State law is not preempted with respect to benefits not regulated by ERISA,[55] or with respect to benefits paid out of an employees' general fund, as opposed to a specifically administered pension fund.[56] Plaintiff's federal Complaint alleges its plans are subject to ERISA. MCAD Defendants do not explicitly dispute this factual allegation, but contend that a factual investigation is necessary to conclude if Partners is paying any non-ERISA benefits, or paying any benefits out of a general fund. MCAD Defendants argue that the need to conduct this factual investigation requires <u>Younger</u> abstention and precludes summary judgment, pursuant to Rule 56(f). Plaintiff assents to parts of the

---

[54] MCAD Defendants' amendment of the charge of discrimination before the MCAD indicates that it is pursuing its theory of associational sex discrimination pursuant to Ch. 151B and Title VII. In the above section, the court concluded that this charge fails to state a claim under Title VII, and that, therefore, the state discrimination claim is preempted. But Plaintiff's request for injunctive relief does not ask the court to enjoin Defendants from investigating Title VII violations, but simply violations of state laws and regulations. Complaint, Paper #1, ¶ 14A. In any event, it is not clear the court could issue such an injunction. While the Title VII claim may fail to state a claim, it would not make sense to label it as "facially conclusively preempted." The court is presently aware of no theory that would serve to excuse mandatory abstention under <u>Younger</u> for simple failure to state a claim. In any event, Plaintiff does not ask this court to enjoin a Title VII investigation and the parties have not briefed the question, which is, therefore, not before the court.

[55] In the two similar district court cases cited above, the courts ruled that city bans on sexual orientation discrimination were not preempted where they related to Non-ERISA plans. <u>Catholic Charities</u>, 304 F. Supp. 2d at 93; <u>Air Transport</u>, 992 F. Supp. at 1173-75.

[56] <u>Massachusetts v. Morash</u>, 490 U.S. 107, 115-116 (1989).

Defendant's Rule 56(f) motions, and agrees that MCAD Defendants could have "'a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had'" such that "MCAD Defendants will be in a position to determine whether they can genuinely dispute Partners' statement that its challenged benefit plans are ERISA plans."[57]

Such factual inquiry, though, is collateral to the issue presented here, and need not be conducted in federal court.  As described above, the M.G.L. ch. 151B claims of sexual orientation and associational sex discrimination presented by Defendant Webster's charge are not co-extensive with Title VII, and are facially conclusively preempted when applied to an ERISA plan.  At the same time, M.G.L. ch. 151B § 4 is clearly not preempted when applied to a non-ERISA benefit.  It is enough for the court to reach these legal conclusions, without delving into the facts, as Plaintiff does not seek a declaration that its plans are ERISA plans.  Rather, it prays that this court "[e]njoin the state official defendants from investigating or adjudicating the compliance of Plaintiff's ERISA benefit plans with Massachusetts state law or regulations."[58]  The court can enter such an injunction, making clear that the order does not enjoin any continued investigation of whether Plaintiff provides any non-ERISA benefits, and if so, whether those non-ERISA benefits are provided in a manner inconsistent with state law.  In this way, the MCAD Defendants may continue their factual investigation before the state agency, while being cognizant of this court's order to cease any investigation once it concludes a plan is an ERISA plan.

No need for factual investigation prevents this court from finding preempted MCAD Defendants' application of state discrimination law to Defendant Webster's charge of

---

[57] Opp. to 56(f) motion, Paper #20, at 2.

[58] Complaint, Paper 1, ¶ 14A.

discrimination in the administration of Plaintiff's ERISA plans.  Accordingly, that portion of the investigation is facially conclusively preempted by ERISA.  MCAD Defendants' <u>Motion to Dismiss on the Basis of Younger Abstention</u> is DENIED.

II.     Rule 56(f) motion

The court should not rule on a motion for summary judgment, but rather allow further discovery when presented with a timely Rule 56(f) motion which shows good cause for requesting additional time for discovery, sets "forth a plausible basis for believing that the necessary facts probably exist and can be learned in a reasonable time," and which establishes that the sought facts would influence the outcome of the pending motion.[59]  Because any injunction issued by this court would allow the MCAD to continue to investigate any non-ERISA benefits it discovers, MCAD Defendants cannot establish the relevance of conducting factual discovery in this court.  No matter the result of any allowed discovery, this court would enjoin the MCAD Defendants from investigating Plaintiff's ERISA benefits, and refuse to enjoin them from investigating Plaintiff's non-ERISA benefits.  Though Plaintiff assented in part to the request for further investigation, the court concludes that this investigation need not be conducted at the federal level.  MCAD Defendants' <u>Rule 56(f) Motion to Deny Plaintiff's Motion for Summary Judgment as Premature</u> is DENIED.

III.    Motion for Summary Judgment

For the reasons stated above, the court, would, at this time, allow Plaintiff's motion for Summary Judgment, and issue an injunction ordering that once MCAD determines a given benefit

---

[59] <u>Adorno v. Crowley Towing & Transp. Co</u>., 443 F.3d 122, 127 (1st Cir. 2006)

administered by Partners is a part of a valid ERISA plan, further investigation in to whether the

provision of that benefit violates state law must stop.  But, it would be procedurally improper to

issue this order at this time.  In response to Plaintiff's <u>Motion for Summary Judgment</u>, MCAD

Defendant's timely filed their <u>Rule 56(f) Motion</u>.  In their memorandum in support of the <u>Rule

56(f) Motion</u>, MCAD Defendants stated, "If for some reason the Court were to deny both the

MCAD Defendant's motion to dismiss on *Younger* abstention grounds and their motion to allow

discovery before considering Partner's summary judgment motion, then the MCAD Defendants

would respectfully request that the Court allow the defendants one month from the date the Court

so rules to file a response to the pending summary judgment motion on the merits."  Where such a

request was timely made, the court concludes it would be improper to strip MCAD Defendants of

their opportunity to file a formal response to Plaintiff's summary judgment motion.  But,

considering that this <u>Memorandum</u> should resolve a number of issues, the court can see no reason

why the normal fourteen-day period to file an opposition would be insufficient.[60]  Accordingly,

within fourteen days, MCAD Defendants may file a memorandum in opposition.  Should such

opposition challenge the conclusions reached in this decision, the court will construe the filing as a

motion for reconsideration, and apply the appropriate standard.  Should MCAD Defendants

determine that they have no additional arguments to be made to this court, they may waive their

right to file an opposition, and the court will not construe such a waiver as a waiver of any right to

appeal the findings in this <u>Memorandum</u>.

### Conclusion

Having found the state law broader than the federal law, and finding no meaningful factual

---

[60] <u>See</u> Local Rule 7.1(b)(2).

dispute, the court holds application of M.G.L. ch. 151B § 4 to the Plaintiff's ERISA plans in the

MCAD proceedings on Defendant Webster's charge to be facially conclusively preempted by

ERISA.  Accordingly, MCAD Defendants' <u>Motion to Dismiss on the Basis of Younger Abstention</u>

is DENIED, MCAD Defendants' <u>Rule 56(f) Motion</u> is DENIED, and Plaintiff's <u>Motion for</u>

<u>Summary Judgment</u> remains under advisement.

An order will issue.


<u>    /s/ Joseph L. Tauro    </u>
United States District Judge